CITY OF HOUSTON v. RICHTER et al.

(Court of Civil Appeals of Texas. Galveston.
May 8, 1913.)

1. APPEAL AND ERROR (§ 622*)—RECORD ON
APPEAL—TIME OF FILING.

Where the record on appeal from an order granting a temporary injunction was filed in the court on appeal within 15 days after the granting of the injunction, but more than 15 days after the entry of an order of injunction and to show cause why the injunction should not be perpetuated, the appeal would not be dismissed for failure to file the record in time.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2732–2735; Dec. Dig. § 622.*]

2. INJUNCTION (§ 105*)—RESTRAINING CRIMINAL PROSECUTIONS—VOID ORDINANCES.

The rule that equity will not by injunction prevent criminal prosecutions under a void city ordinance is subordinate to the rule that equity will grant relief where there is not a plain, adequate, and complete remedy at law, and where it is necessary to prevent irreparable injury to property rights.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 178, 179; Dec. Dig. § 105.*]

3. INJUNCTION (§ 105*)—RESTRAINING CRIMINAL PROSECUTIONS—VOID ORDINANCES.

Where many journeymen plumbers of a city sue for themselves and others similarly situated to restrain a city from enforcing an ordinance requiring the journeymen plumbers to procure a city license and give a bond as a prerequisite to their exercising their calling in the city, and allege that they and the other persons have a common right, and they and each of them are threatened with prosecution under the ordinance unless they either cease to carry on their business or comply with the ordinance, which is illegal, and that each of them will be harassed with successive and continuous prosecutions, equity has jurisdiction to restrain by injunction the enforcement of the ordinance, if invalid, and thereby prevent a multiplicity of criminal prosecutions· and a destruction of the property rights of complainants and others similarly situated.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 178, 179; Dec. Dig. § 105.*]

4. MUNICIPAL CORPORATIONS (§ 592*)—ORDINANCE—REGULATION OF PLUMBING BUSINESS—VALIDITY—"LICENSE."

An ordinance of a city, which requires journeymen plumbers to be examined and licensed by the examining board of plumbers to obtain a city license, and to give a bond as a prerequisite to their exercising their business in the city, conflicts with Acts 25th Leg. c. 163, as amended by Acts 31st Leg. c. 90, providing for the examination and licensing by a board of examiners of plumbers, and is invalid though the city may under its charter enact ordinances to protect the health, life, and property, and to preserve and enforce good government, order, and security of its inhabitants and to exercise all powers of municipal government not prohibited by the charter, a provision of which declares that no ordinance inconsistent with the laws of the state shall be enacted; a "license" being a formal permission from the proper authorities to perform certain acts, or to carry on a certain business which, without such permission, will be illegal.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1311–1314; Dec. Dig. § 592.*

For other definitions, see Words and Phrases, vol. 5, pp. 4137–4141.]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Suit by George Richter and others, suing for themselves and others similarly interested, against the City of Houston. From an order granting a temporary injunction, defendant appeals. Affirmed.

J. E. Niday and T. L. Dunn, both of Houston, for appellant. Hutcheson & Hutcheson, of Houston, for appellees.

REESE, J. On October 17, 1910, the city of Houston, operating under a special charter, adopted an ordinance with regard to plumbing in said city, the material portions of which are as follows: "No person shall do any job of plumbing or drain laying or make any connection with, or opening into, any public sewer, or lay any drain or do any plumbing, although regularly examined and licensed by the examining and supervising board of plumbers, unless he shall possess also the license of the city of Houston, issued by the city engineer, said license to operate for one year, which shall be issued only on the applicant complying with the terms and conditions hereinafter stated, and any person who shall do any job of plumbing or drain laying in the city of Houston without having procured the license of the city of Houston, issued by the city engineer as required herein, without having filed the bond hereinafter required, shall be guilty of an offense and upon conviction thereof in the corporation court shall be fined in any sum not less than ($5.00) five dollars nor more than ($50.00) fifty dollars for each offense, provided that each separate job of work that is done without a license shall constitute a separate offense. No license shall be issued for the city of Houston by the city engineer to any plumber, unless he shall first exhibit to the city engineer a lawful license in full force and effect issued by the examining and supervising board of plumbers of the city of Houston, nor until he has given a good and sufficient bond, satisfactory to the mayor of the city of Houston, as follows: Each master plumber shall give a bond in the sum of two thousand dollars ($2,000.00) and each journeyman plumber a bond in the sum of one thousand dollars ($1,000.00) and each drain layer shall give a bond in the sum of one thousand dollars ($1,000.00). Said bonds shall be conditioned upon the faithful performance and observance of all ordinances of the city of Houston pertaining to plumbing and drain laying, or excavations, and all rules, regulations and specifications established under said ordinance and conditioned further that said plumber or drain layer will indemnify and save harmless the city of Houston, and all other persons, against all accidents and damages caused by any negligence in protecting the work, or by any unskilled or unfaithful work done by

themselves. Said bond shall be for the benefit of any person aggrieved or injured by reason of failure to properly observe the ordinances of the city in the execution of said work."

George Richter and 45 others, journeyman plumbers in the city of Houston, suing for themselves and all others similarly interested, instituted this action in the district court of Harris county, to enjoin the enforcement of the provisions of this ordinance in so far as it requires them, as journeyman plumbers, and other journeyman plumbers of the city of Houston, as a prerequisite to their exercising their calling in the city of Houston, to give the bonds and procure the license of the city engineer as provided in said ordinance, on the ground that such ordinance was in conflict with the provisions of the act of 1897, c. 163 (chapter 13, R. S.), as amended by chapter 90, Acts of the 30th Legislature (Acts of 1909, p. 162). Temporary injunction was prayed for to be made perpetual on final hearing. This application, which was sworn to by all of the plaintiffs, was presented to the district judge, who set the same down for hearing three days later, in the meantime issuing a temporary restraining order until the hearing. On the hearing the application for temporary injunction was granted. From this order the defendant appeals.

[1] Motion to dismiss the appeal is made by appellees on the ground that the record was not filed in this court within 15 days after the entry of record of the order, as provided by statute. Motion is based on the following facts, which are shown by the record: The petition with the prayer for temporary injunction was presented to the district judge on May 18, 1912, whereupon he indorsed thereon the following order, which, with the petition, was filed the same day: "This petition for injunction having been presented to me on the 18th day of May, 1912, I hereby order that writ of injunction as prayed for herein issue forthwith, restraining the city of Houston, its agents and representatives, from the attempted enforcement of section 2-A and section 3 of the plumbing ordinance of said city and that it be cited to appear before this court on the 21st day of May, 1912, at 4 p. m., and show cause why this injunction should not be perpetuated."

Writ thereupon issued in the usual form restraining the defendant as prayed for "until the further orders of this court," and the defendant was required to appear before said district court on the following Tuesday, May 21, 1912, at an hour named, "to then and there show cause why this injunction should not be perpetuated." The defendant filed answer, and the matter came on for a hearing on said date, when the following order was made and duly entered of record the same day: "Be it remembered that on, to wit, the 21st day of May, 1912, parties complainant and the defendant having appeared before me, in obedience to the order entered in this cause by me on the 18th day of May, 1912, to show cause why the temporary restraining order heretofore granted should not be continued in force, and an injunction granted as prayed, and having heard and fully considered the matters on said day, being of the opinion that plaintiffs are equitably entitled to the injunction as prayed by them, it is here now by the court so considered, and ordered, adjudged, and decreed that the defendant be and it is hereby enjoined from the attempted enforcement of section 2-A and section 3 of the plumbing ordinance of the city of Houston, and that upon the plaintiffs herein giving bond in the sum of $300, the clerk of this court issue a writ of injunction directed to the defendant, its agents and attorneys, commanding them to desist from in any manner enforcing or attempting to enforce the provisions of section 2-A and section 3 of the plumbing ordinance of the city of Houston, said injunction to continue in full force until final hearing of this cause; all costs of this hearing to be borne by defendant, to which the defendant, city of Houston, in open court excepts and gives notice of appeal to the Court of Civil Appeals, First Supreme Judicial District, at Galveston."

The record was filed in this court June 3d, more than 15 days after the entry of record of the first order above referred to, but less than 15 days after the entry of the second. The language of the first order affords some basis for appellees' motion to dismiss, but when we consider all the proceedings it seems to us clear that what the judge intended was to set the application for temporary injunction down for a hearing on the 21st and in the meantime to restrain the defendant until such hearing was had. The judge seemed to be aware of, and to recognize, the difference between the temporary injunction prayed for, the office of which when granted was to restrain the parties until a final disposition of the case, and the temporary restraining order to restrain them only until the hearing of the application for temporary injunction. It is simply a case of misuse of terms, which a little care would have prevented. The motion is overruled. Caswell v. Fundenberger, 47 Tex. Civ. App. 456, 105 S. W. 1017; Berger v. De Loach, 52 Tex. Civ. App. 242, 113 S. W. 557.

The case was heard on the sworn bill and the answer of defendant, which contains a general denial, and was sworn to. The assignments of error do not assail the truth of any of the allegations of the bill, but present only questions of law arising thereupon.

The petition alleges that the plaintiffs are all journeyman plumbers of the city of Houston and are and have been engaged in prosecution of the said calling in said city. The provisions of the act of the Legislature referred to herein are substantially set out,

and it is averred that plaintiffs, and each of them, have complied with each and every condition of said law to entitle them to prosecute the said business of journeyman plumbers in said city of Houston. The enactment of the ordinance hereinbefore set out is alleged, and it is averred that the city of Houston and its agents and representatives have in the past attempted, and are now attempting, and will in the future continue to attempt, to prevent plaintiffs from carrying on their lawful occupation as licensed journeyman plumbers and are threatening to arrest and prosecute plaintiffs and each of them, and punish them by fine, as provided in said ordinance, unless plaintiffs comply with the provisions of said ordinance requiring them, in addition to the requirements of the said statute, to give the bonds provided in said ordinance and to procure a license from the city engineer which can only be granted after said bond has been given. It is further averred that complainants, and each of them, are threatened with arrest and punishment if they enter any premises for the purpose of pursuing their calling; that one of their number has been arrested, fined, and committed to prison for violation of said provisions of the ordinance, from which imprisonment he was released on habeas corpus; that, since this proceeding, warrants have been issued for the rest of journeyman plumbers not complying with the provisions of said ordinance, and several arrests have been made, which cases are now pending in the corporation court of the city of Houston. It is further averred that the provisions of the ordinance in question requiring journeyman plumbers to give bond and procure a license from the city engineer, and subjecting those of them who have complied with the state law to fine and imprisonment for pursuing their calling without first having procured said license and given said bond, are in conflict with the state laws and null and void, and that if the same are allowed to be enforced plaintiffs will be harassed by a multiplicity of suits and prosecutions (unless they comply with such void ordinance), and their business will be destroyed; that if they give such bonds, in order to avoid arrest, they could only be relieved from liability from such unauthorized bonds by instituting many different suits to cancel the same, which would entail the necessity for a multiplicity of suits for that purpose. The necessity for the injunction is based upon the fact that plaintiffs' business and substantial property rights will be destroyed, and that they will be subjected to a multiplicity of suits, unless defendant is enjoined from enforcing the said ordinance.

By the first and second assignments of error the judgment is assailed for want of equity in the bill and on the ground that the allegations of the petition, if true, do not entitle appellees to injunction, in that they have a plain, adequate, and complete remedy at law.

[2] This presents a question which has been frequently passed upon, and upon which the decisions are not altogether in harmony. The general rule that equity will not interfere by injunction to prevent criminal prosecutions under a void ordinance of a city is subordinate to the general principle that equity will grant relief when there is not a plain, adequate, and complete remedy at law, and when it is necessary to prevent irreparable injury. City of Austin v. Austin Cemetery Association, 87 Tex. 336, 28 S. W. 528, 47 Am. St. Rep. 114; Robinson v. City of Galveston, 51 Tex. Civ. App. 292, 111 S. W. 1076; Schlitz Brewing Co. v. City of Superior, 117 Wis. 297, 93 N. W. 1120.

The right to the writ of injunction to restrain the enforcement of criminal prosecutions under a void city ordinance, when such prosecutions would result in irreparable injury to property rights of the complainant, was upheld in all of the above cases, and the Austin Cemetery Association Case is considered as having settled the law on this point in this state. But the rule as applied in *that case is not authoritatively determinative* of this case. In that case the cemetery association had acquired certain property which it was proposed to use as a burial ground, and the purpose was to sell burial lots. The effect of the ordinance, the enforcement of which was sought to be enjoined, made it a penal offense, punishable by fine, for any person to bury the dead in this cemetery. The ordinance was directed, not at the cemetery association as the owner of the property, but at other persons who might otherwise be disposed to purchase lots in its cemetery for burial purposes. Prosecutions under the ordinance would be directed against such persons. The reason upon which the general rule was based, that the law afforded a plain and adequate remedy against such prosecutions, in the right to set up the invalidity of the ordinance in defense, did not apply, as there was no way in which the association could control the actions of the persons threatened with prosecutions, who could be effectually prevented from using plaintiffs' cemetery by · such threats, regardless of the invalidity of the ordinance. Thus the ordinance operated the destruction of plaintiff's property by its mere unchallenged existence as an ordinance of the city, for which plaintiff had no remedy except the one sought by him. If the penalties of the ordinance had been directed at the owners of the cemetery, this rule would not have applied, as is shown by illustration used by the court, of an ordinance prohibiting the sale of butcher's meat in a certain locality and also prohibiting the sale of meat to be there sold and the buying in such prohibited place. The person pursuing the occupation of selling meat in such place could enjoin the enforcement of such

ordinance, if void, as his business would be destroyed. Persons would be prevented from selling meat to or buying from him. But, says the court, "if the penalty was denounced against no one but the market man who should sell, it would seem that his remedy would be to proceed with his business and defeat any prosecutions that should be brought against him for the infraction of the void ordinance." It was by reason of this distinction that in the case of Robinson v. City of Galveston, supra, this court held that Robinson & Witte, the firm of contracting master plumbers, would be entitled to the writ of injunction, but not Alfred Robinson, against whom the penalties of the ordinance were directed, and who had an adequate remedy by defeating any prosecution brought against him. This remedy was not available to Robinson & Witte. The penalties of the ordinance were directed, not against them, but against journeyman plumbers who were prevented thereby from working for them.

This much will serve to show that the principle underlying the cases cited does not alone serve to support the present case. We have the fact that the enforcement of the ordinance will injuriously affect, if not destroy, the business of plaintiffs as journeyman plumbers, a property right as much entitled to protection, in a proper case, as a horse or a farm; but there is not the same ground of irreparable injury, as each of the plaintiffs could defend against any criminal prosecution, under the ordinance in question, on the ground that it was void. There is respectable authority, however, for the broad proposition that where property rights will be destroyed, for this reason alone unlawful interference by criminal proceedings under void law or ordinance may be reached and controlled by a court of equity. N. O. Baseball & Amusement Co. v. City of New Orleans, 118 La. 228, 42 South. 784, and cases cited.

[3] There is another ground of equity jurisdiction under which the right to grant the injunction in the present case can be sustained. Plaintiffs, 46 in number, suing for themselves and all others similarly interested, allege that they and such other persons have a common right, and that they and each of them are threatened with prosecution under said ordinance, unless they either cease to carry on their business or comply with the illegal requirements of the ordinance, and that each of them will be harassed with successive and continuous prosecutions. It seems entirely clear that the only adequate relief, if not the only relief at all, from such successive prosecutions, is by the remedy of injunction. An investigation of the authorities leads to the conclusion that in such case, and especially when, as here, such prosecution will seriously impair, if not destroy, appellees' property rights, equity will interfere by the writ of injunction to prevent a multiplicity of suits. To put each of the parties to his remedy of a defense to such prosecutions by setting up the invalidity of the ordinance does not, in fact, afford him full, complete, and adequate relief. In City of Tyler v. Story, 44 Tex. Civ. App. 250, 97 S. W. 856, from the Court of Civil Appeals of the Fourth District, cited and relied upon by appellant, referring to the general rule that equity will not interfere by injunction to restrain criminal prosecutions under a void ordinance, the court says that "it seems that the multiplicity or oppressiveness of criminal prosecutions also constitutes an exception to the rule and affords a ground for the interference of equity." 1 Pom. Eq. § 255 et seq., § 261. The right to injunction on this ground is denied in the strongest terms by the Supreme Court of Alabama in Brown v. Birmingham, 140 Ala. 590, 37 South. 173, and Old Dominion Tel. Co. v. Powers, 140 Ala. 220, 37 South. 195, 1 Ann. Cas. 119; but the exception based on destruction or impairment of property rights is recognized in the former case. In the following cases the right to injunction on this ground is expressly affirmed: 1 Joyce on Inj. § 531; New Port v. Bridge Co., 90 Ky. 193, 13 S. W. 720, 8 L. R. A. 484; Schlitz Brewing Co. v. City of Superior, 117 Wis. 297, 93 N. W. 1120; Sylverton Co. v. St. Louis, 130 Mo. 323, 32 S. W. 649, 51 Am. St. Rep. 566; Rushville v. Rushville Natural Gas Co., 132 Ind. 575, 28 N. E. 853, 15 L. R. A. 321; City of Hutchinson v. Beckham, 118 Fed. 399, 55 C. C. A. 333; Chicago v. Collins, 175 Ill. 445, 51 N. E. 907, 49 L. R. A. 410, 67 Am. St. Rep. 224; Wilkie v. City of Chicago, 188 Ill. 444, 58 N. E. 1004, 80 Am. St. Rep. 182. The Wilkie Case last cited is in all respects on all fours with the present case. We think the petition presented proper grounds for the grant of the writ of injunction, assuming that the ordinance in question is void.

[4] Under the remaining assignments of error appellant presents the propositions that the ordinance in question is strictly within the police powers of the city, and is expressly authorized and contemplated by the statute referred to and is not in conflict therewith.

The act of 1897 (chapter 13, R. S.) provides for the examination and licensing of plumbers in every city of this state by a board consisting of "a member of the board of health, the chief plumbing inspector, a master plumber of not less than ten years' active experience, and a journeyman plumber of not less than five years' active experience"; the mayor and local board of health to make such appointment. It provides for the payment of fees for such examination, and for the issuance of license to such persons as pass such examination. By the act of 1909, section 11 of the act of 1897 was amended so as to make it applicable to cities organized under a special charter, as well as

those chartered under general law. "License," in the sense in which it is here used, is defined as "a formal permission from the proper authorities to perform certain acts or to carry on a certain business, which, without such permission, would be illegal." It would have added nothing to the force of this term to have expressly provided that each licensed plumber should have the right to practice his calling in the particular city in which he receives his license. The terms of the ordinance of the city have been heretofore set out. The effect of its provisions is to prohibit, under penalty of fine, any plumber, who has received this license from the board of examiners under the provisions of the statute, from exercising the privileges given him by the statute, unless he further gives the bond provided by the ordinance and receives a further license from the city of Houston, issued by the city engineer. It is contended by appellant that power to enact such ordinance is conferred by provisions of the charter "to enact and enforce all ordinances to protect health, life and property and to preserve and enforce the good government, order and security of its inhabitants, and to protect the lives, health and property thereof," and the further provision, "it being intended by this act to grant and bestow upon the inhabitants of the city of Houston full power of self-government, and it shall have and exercise all powers of municipal government, not prohibited to it by this charter or by some general law of the state of Texas, or the provisions of the Constitution." In addition to this latter limitation upon the powers granted by the charter, it is expressly provided by article 2 that "no ordinance shall be enacted inconsistent with the laws of the state of Texas, or inconsistent with the provisions of this act." We think it is too clear for argument that the ordinance in question is inconsistent with the statute referred to. The precise question was decided in an able opinion by the Supreme Court of Illinois in Wilkie v. City of Chicago, supra. The same view was taken by this court in Robinson v. City of Galveston, supra, in regard to conflict between a similar ordinance of the city of Galveston and the statute in question. It was held, however, that the statute did not apply to a city acting under a special charter, which did not have the officers required to form the board of examiners provided by the statute. The amendment of 1909, passed after the decision of the Robinson Case, remedied this defect.

The general power given by the charter to the city over the matters of drainage, sewers, etc., is to be taken with the limitations in article 2, above referred to, and authorizes such regulations as may be deemed necessary or proper of the work to be done. This power can be exercised to the fullest extent without infringing upon the right of a

licensed plumber under the statute to pursue his calling.

This disposes of all the questions presented by the brief of counsel. We find no error, and the judgment is affirmed.

Affirmed.